IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-00171-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAWONE REGINALD BENNETT, | ) | |
| | ) | |
| Defendant. | ) | |

On September 11, 2020, Jawone Reginald Bennett ("Bennett" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 57]. On April 22, 2021, Bennett, through counsel, filed a memorandum in support [D.E. 61]. On June 6, 2021, the United States responded in opposition [D.E. 65]. As explained below, the court denies Bennett's motion.

I.

On November 27, 2019, pursuant to a written plea agreement, Bennett pleaded guilty to possession with the intent to distribute a quantity of cocaine, a quantity of marijuana, and 28 grams of crack cocaine and to possessing a firearm in furtherance of a drug trafficking crime. See [D.E. 35, 37]; see also [D.E. 65] 8. On June 18, 2020, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See PSR [D.E. 41]; [D.E. 53]; [D.E. 70] 4; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Bennett's total offense level to be 23, his criminal history category to be VI, and his advisory guideline range to be 92 to 115 months' imprisonment, to be followed by a minimum of 60 months for the firearm count. See PSR ¶ 66;

[D.E. 70] 5. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Bennett to 83 months' imprisonment on count two and 60 months' consecutive imprisonment on count four, for a total of 143 months' imprisonment. See [D.E. 55] 2; [D.E. 70] 14–24. The sentence included a nine-month adjustment on count two under U.S.S.G. § 5G1.3(b)(1). See [D.E. 70] 20.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

2

medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), petition for cert. docketed, (U.S. Sept. 8, 2021) (No. 21-5624); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides

---

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

4

informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Bennett seeks compassionate release pursuant to section 3582(c)(1)(A). See [D.E. 57]. Bennett did not pursue any administrative remedies before filing his motion for compassionate release. See id. at 4–5. According to Bennett, because he was still awaiting transport to the BOP when he filed his motion, he did not have to exhaust his administrative remedies. See id. (citing United States v. Lebanion, No. 6:12-26-KKC-HAI-04, 2020 WL 4809433, at *2 (E.D. Ky. Aug. 18, 2020) (unpublished); United States v. Williams, No. 19-cr-134-PWG, 2020 WL 3073320, at *3 (D. Md. June 10, 2020) (unpublished); United States v. Van Dyke, No. 2:15-CR-00025-JLQ-1, 2020 WL 1811346, at *1–2 (E.D. Wash. Apr. 8, 2020) (unpublished)). Bennett also argues that even though he is now in BOP custody, "[t]he Warden at USP Atlanta is unlikely to grant [Bennett's] request in a timely fashion," and Bennett asks the court to waive the exhaustion requirement. [D.E. 61] 4. The government disagrees and asks the court to deny Bennett's motion for failure to exhaust. See [D.E. 65] 5.

The Fourth Circuit has not squarely addressed the reach of section 3582's exhaustion requirement. Cf. McCoy, 981 F.3d at 283. The court assumes without deciding that when Bennett

5

filed his motion in June 2020, Bennett exhausted his administrative remedies. See Williams, 2020 WL 3073320, at *3 (finding the administrative exhaustion requirement satisfied "because there [was] no BOP Warden to whom [the defendant could] send a petition"). Accordingly, the court addresses Bennett's motion on the merits.

In support of his motion for compassionate release, Bennett cites the COVID-19 pandemic, his health conditions, and his race. See [D.E. 61] 5–7. Bennett also cites his skills in plumbing, heating, ventilation, and air conditioning, his supportive family including his three children (ages 15, 20, and 23), and his release plan. See [D.E. 61] 7–8; [D.E. 57] 3–4.

The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Bennett argues that his obesity, diabetes, and high blood pressure make him more likely to contract COVID-19. See [D.E. 61] 5; [D.E. 57] 2–3. Bennett has not alleged that he is unable to manage his health conditions while incarcerated or that the BOP is not giving him proper treatment. Moreover, COVID-19 vaccines are available to any inmate at USP Atlanta. See [D.E. 65] 7. Bennett has not disclosed to the court whether he is vaccinated. Cf. [D.E. 61, 62]. Nevertheless, the wide availability of COVID-19 vaccines diminishes Bennett's argument that his medical conditions warrant his immediate release. Cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Accordingly, reducing Bennett's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that, taken

6

together, the COVID-19 pandemic, Bennett's health conditions, and Bennett's race are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Bennett's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Bennett is 43 years old and has served less than 1.5 years of his nearly 12-year sentence. See [D.E. 61] 1; [D.E. 55]. Bennett is incarcerated for possession with intent to distribute a quantity of marijuana, a quantity of cocaine, and 28 grams or more of crack cocaine and for possessing a firearm in furtherance of a drug trafficking offense. See PSR ¶¶ 1, 2, 4, 6; see also [D.E. 65] 8. Bennett has a serious criminal record that includes willful obstruction of law enforcement, deposit account fraud, possession of marijuana, possession of cocaine, attempted robbery by intimidation, and third-degree attempted sale of a controlled substance. See id. ¶¶ 16–24. Furthermore, Bennett has a history of probation revocations and violations, including absconding while on supervision. See id. ¶¶ 20–21, 23.

The court has also considered Bennett's rehabilitation efforts,[2] potential exposure to COVID-19, medical conditions, job skills, and release plan. Cf. Pepper v. United States, 562 U.S. 476,

---

[2] The court recognizes that it sentenced Bennett during the pandemic, and as a result, Bennett has not yet had an opportunity to participate in the BOP's educational and drug treatment programs because they have been restricted due to COVID-19. See [D.E. 61] 7. For purposes of this motion, the court assumes Bennett would be taking advantage of these programs if they were available. At the same time, because the court sentenced Bennett during the pandemic, the court was aware of COVID-19 and its effects when it sentenced Bennett.

7

480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Bennett, the section 3553(a) factors, Bennett's arguments, the government's persuasive response, and the need to punish Bennett for his criminal behavior, to incapacitate Bennett, to promote respect for the law, to deter others, and to protect society, the court denies Bennett's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

II.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 57].

SO ORDERED. This 6 day of October, 2021.

JAMES C. DEVER III
United States District Judge

8